IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |  |
|---|---|---|
| BOBBY GRIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:13-cv-1141-NJR-DGW |
| | ) | |
| MEDICAL DIRECTOR, C/O DAVIS, LANG, | ) | |
| MAJOR ZIEGLER, SGT. PELKER, and | ) | |
| UNKNOWN PARTY, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge Nancy J. Rosenstengel pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the question of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. § 1997e(a). For the reasons set forth below, it is **RECOMMENDED** that the Motion for Summary Judgment filed by Defendant Medical Director (Doc. 88) and the Motion for Summary Judgment filed by Defendants C/O Davis, Lang, Sgt. Pelker, and Major Ziegler (Doc. 93) be **GRANTED**, and that the Court adopt the following findings of fact and conclusions of law.

### FINDINGS OF FACT

Plaintiff, Bobby Grier, an inmate at Lawrence Correctional Center, filed this action pursuant to 42 U.S.C. § 1983 alleging that Defendants violated his constitutional rights while he was incarcerated at Menard Correctional Center ("Menard"). After an initial screening by the Court, Plaintiff was allowed to proceed on the following counts:

> Count 1: Deliberate indifference claim against Defendants C/O Davis, Lang, Pelker, Ziegler, Menard Medical Director, and an Unknown Placement Officer for disregarding Plaintiff's medical need for placement in a lower bunk; and
>
> Count 2: Eighth Amendment claim against Defendant Davis for housing Plaintiff in excessively cold conditions.

On August 8, 2014, Defendant Medical Directors John Trost and Robert Shearing filed a Motion for Summary Judgment (Doc. 88) arguing that Plaintiff failed to exhaust his administrative remedies prior to filing this suit. Based on a review of Menard's Grievance Logs and Emergency Grievance Logs, Defendants assert that Plaintiff did not file any grievances related to the events at issue in this lawsuit prior to filing suit on November 4, 2013. Defendants argue that although Plaintiff filed an emergency grievance on November 26, 2013 addressing his need for a low bunk and slow walk permit, Plaintiff had already filed suit at the time this grievance was filed.

Plaintiff filed a response to Defendant Medical Director's Motion on September 25, 2014 (Doc. 102). In his response, Plaintiff avers that he filed an emergency grievance on September 30, 2013 complaining about the denial of a low bunk and slow walk permit. According to Plaintiff, he placed his emergency grievance in his cell door and saw it picked up by correctional officers on the 11 p.m. to 7 a.m. shift.

On August 22, 2014 Defendants C/O Davis, Lang, Sgt. Pelker, and Major Ziegler filed a Motion for Summary Judgment (Doc. 93) arguing that Plaintiff failed to exhaust his administrative remedies prior to filing suit against them. Based on a review of the grievance records from the Administrative Review Board ("ARB") and Menard, Defendants assert that Plaintiff did not complete the grievance process prior to filing suit against them on November 4, 2013. Specifically, Defendants assert that the first record of a grievance filed by Plaintiff at

Menard was an emergency grievance dated November 26, 2013, which was received by the Grievance Office on December 2, 2013. With respect to this grievance, the CAO determined that it did not constitute an emergency and it was returned to Plaintiff on December 3, 2013. Importantly, as mentioned above, this grievance was filed *after* Plaintiff filed his lawsuit.

Plaintiff filed his response to Defendants' Motion on September 23, 2014 (Doc. 100) asserting that he filed two emergency grievances addressed to Warden Harrington on September 30, 2013 and on October 1, 2013. Plaintiff claims that these grievances contained the names of each Defendant and complained of the events giving rise to this lawsuit.

### *Pavey Hearing*

Pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), the Court held a hearing on the issue of exhaustion on December 16, 2014. At the hearing, Plaintiff reiterated that he filed emergency grievances on September 30, 2013 and October 1, 2013 complaining of the events at issue in this lawsuit, but never received a response. Plaintiff explained that he failed to mention individual defendants in his September 30, 2013 grievance, but indicated that his October 1, 2013 grievance rectified this oversight and named Defendants Davis, Ziegler, Pelker, and Lang. Plaintiff testified that he placed these grievances in his cell bars and they were picked up by the officers on the eleven-to-seven shift. Plaintiff averred that he never received a response to either of these grievances.

Plaintiff directed the Court to an entry dated December 6, 2013 on his Cumulative Counseling Summary (Defendant's Exhibit A). This entry, written by Correctional Officer T. Gruber-Harrington, states, in its entirety: "Received grv, he want low bunk, slow pass walk and to be labeled as chronic which he had at other inst. Response on 12/6/13 you must submit a sick

call and referred to a Dr. at MEN, we do not accept low gallery permits from other inst. Follow procedure." Plaintiff argued that this entry was not in reference to the November 26, 2013 grievance he filed, but rather, references another grievance he filed concerning the same complaints. In support of this claim, Plaintiff explained that this entry refers to Plaintiff's request that he "be labeled as chronic," but he did not include this request in his November 26, 2013 grievance. Plaintiff testified that he did include this request in his October 1, 2013 emergency grievance.

Ms. Tracy Gruber Harrington, the correctional officer who composed the December 6, 2013 entry in Plaintiff's Cumulative Counseling Summary, testified that she would have received the grievance referenced in this entry on December 6, 2013. Ms. Gruber Harrington testified that this grievance would not have been filed in September, 2013, as grievances do not sit around that long and she answers the mail as she receives it. According to Ms. Gruber Harrington, the grievance for which she entered this response would have been placed in the institutional mail to be returned to Plaintiff.

## CONCLUSIONS OF LAW

*Summary Judgment Standard*

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in

genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

*Exhaustion Requirements under the PLRA*

> The Prison Litigation Reform Act provides:
>
> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*,182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See*

*Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. In *Pavey*, the Seventh Circuit instructed District Courts to conduct a hearing to determine whether a Plaintiff has exhausted his remedies. *Id.* 544 F.3d at 742. If a Plaintiff has exhausted his remedies, the case will proceed on the merits. If, however, a Plaintiff has not exhausted, the Court may either allow Plaintiff to exhaust or terminate the matter.

*Exhaustion Requirements under Illinois Law*

Under the procedures set forth in the Illinois Administrative Code, an inmate must first attempt to resolve a complaint informally with his Counselor. ILL. ADMIN. CODE TIT. 20, § 504.810(a). If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. *Id.* §504.810(b). The grievance form shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of the complaint. *Id.* § 504.810(b). The grievance officer is required to advise the Chief Administrative Officer ("CAO" – usually the Warden) at the facility in writing of the findings on the grievance. *Id.* § 504.830(d). The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed, where reasonably feasible under the circumstances. *Id.* § 504.830(d). An inmate may appeal the decision of the CAO in writing

within 30 days to the Administrative Review Board for a final decision. *Id.* § 504.850(a). *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006). An inmate's administrative remedies are not exhausted until the appeal is ruled on by the Administrative Review Board. *See Id.* The Administrative Review Board shall make a final determination of the grievance within six months after receipt of the appealed grievance, where reasonably feasible under the circumstances. *Id.* § 504.850(f).

An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. If the CAO determines there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance shall be handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender indicating what action shall be taken. *Id.* §504.840. If, after receiving a response from the CAO, an offender feels that the grievance has not been resolved, he may appeal in writing to the ARB within 30 days after the date of the CAO's decision. *Id.* § 504.850(a).

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to "responsible persons" about the complained-of conditions. *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v.*

*Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

*Discussion*

Based on the evidence adduced and arguments made at the hearing, it is recommended that the Court find Plaintiff did not exhaust his administrative remedies prior to filing this suit.

Plaintiff does not contest that the November 26, 2013 grievance filed at Menard is insufficient to establish exhaustion in this case as it was filed after this lawsuit was initiated. To establish his exhaustion of administrative remedies, Plaintiff relies on his assertion that he filed emergency grievances on September 30, 2013 and October 1, 2013 complaining of the events in this lawsuit. With respect to the September 30, 2013 grievance, Plaintiff testified that this grievance complained only about his general problems and did not specifically identify any defendants. Plaintiff testified that his grievance filed October 1, 2013 named Defendants Davis, Lang, Pelker, and Ziegler.

The Court does not find Plaintiff's testimony regarding his filing of these emergency grievances credible. The Court notes that Plaintiff's response to Defendant Davis', Lang's, Pelker's, and Ziegler's Motion for Summary Judgment states that he filed emergency grievances on September 30, 2013 and October 1, 2013 that name each defendant and explain that he was being forced to sleep, eat, and reside on the floor and being denied medical treatment (Doc. 100, p. 5). This statement was contradicted by his testimony at the hearing wherein Plaintiff stated that only his October 1, 2013 grievance mentioned any defendants by name. Further, Plaintiff never testified that he complained of any conduct of the Medical Director in either of these

Page **8** of **10**

emergency grievances. Plaintiff's conflicting accounts of the content of these grievances undermines his credibility; thus, the Court is not inclined to believe Plaintiff's unsupported testimony that he filed emergency grievances sufficient to establish exhaustion on September 30, 2013 and/or October 1, 2013. The Court notes that at the hearing Plaintiff relied on an entry dated December 6, 2013 for corroboration of his testimony. As discussed above, this entry references a grievance Plaintiff filed wherein he asked to "be labeled as chronic." Although the Court understands Plaintiff's argument, it fails to provide any support for his statements concerning his emergency grievances. First, Ms. Gruber Harrington testified that emergency grievances are not reviewed by a counselor; rather, they are sent directly to the warden for review. Second, a grievance submitted by Plaintiff in September, 2013 or October, 2013 would not have been reviewed in December, 2013, as they are apparently reviewed in a timelier manner. Accordingly, the December 6, 2013 entry does not support Plaintiff's contention that he filed emergency grievances on September 30, 2013 and October 1, 2013. For these reasons, it is recommended that the Court find Plaintiff failed to properly exhaust his administrative remedies prior to filing this suit, in violation of 42 U.S.C. § 1997e(a).

## RECOMMENDATIONS

Based on the foregoing, it is hereby **RECOMMENDED** that the Motion for Summary Judgment filed by Defendant Medical Director (Doc. 88) and the Motion for Summary Judgment filed by Defendants C/O Davis, Lang, Sgt. Pelker, and Major Ziegler (Doc. 93) be **GRANTED**; that the Court **FIND** that Plaintiff did not exhaust his administrative remedies prior to filing suit; that the action be **DISMISSED WITHOUT PREJUDICE**; and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: February 18, 2015**

                                              **DONALD G. WILKERSON**
                                              **United States Magistrate Judge**